# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-00033-CR-LENARD

UNITED STATE OF AMERICA

v.

TREVOR E. BAILEY,

     Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on the Motion to Dismiss ("Motion") (D.E. 16) filed by Defendant Trevor E. Bailey ("Defendant") on September 29, 2025. The Motion seeks the dismissal of the Indictment ("Indictment") (D.E. 5), filed January 17, 1997, on the grounds that the post-indictment delay violated Defendant's Sixth Amendment right to a speedy trial. D.E. 16 at 1. On October 14, 2025, the Government filed its Response ("Response") (D.E. 27) in opposition, arguing that Defendant is to blame for the delay and that the delay did not violate Defendant's Sixth Amendment rights. D.E. 27 at 4. On October 21, 2025, Defendant filed his Reply ("Reply") (D.E. 29) reiterating his argument from the Motion and challenging the Government's argument. D.E. 29 at 1-4. Having reviewed the Motion, the Response, the Reply, the docket, and otherwise being fully informed, the Court finds as follows.

## I.     Background

On January 17, 1997, Defendant and two others were indicted for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. D.E. 5 at 1-2. The Government alleges that on December 9, 1996, Opa-Locka police officers discovered approximately 5,000 lbs. of marijuana in a warehouse, inside of which Defendant was standing. D.E. 3 at 2-3. Defendant and his alleged co-conspirators were arrested by the State of Florida ("Florida") and charged with trafficking in marijuana, possession of marijuana with intent to distribute, and operating a business without a license. D.E. 16 at 2. On January 21, 1997, Florida dismissed the charges against Defendant. D.E. 27 at 2.

On January 27, 1997, the Indictment in this case was unsealed. *Id*. Subsequently, Defendant, a United States citizen, fled the country by unknown means.[1] D.E. 27 at 2; D.E. 16 at 2. On May 2, 1997, Defendant was placed on fugitive status, and on September 29, 1997, an Interpol red notice was issued as to Defendant. D.E. 27 at 2. This placed federal authorities and Interpol members on alert to arrest Defendant for extradition purposes if Defendant traveled via commercial airline or vessel. *Id*. After fleeing the country, Defendant did not travel by these means. *Id*.

In July 2022, counsel for Defendant contacted the Government to discuss the case against Defendant, but did not reveal Defendant's location. *Id*. On October 5, 2023,

---

[1] Though the Government was unaware of Defendant's location until July 2025, Defendant claims he "was living in plain sight in his birth country of Jamacia [sic]." D.E. 27 at 2; D.E. 29 at 2. Thus, the Court infers that Defendant fled the United States and went to Jamaica.

Defendant filed a Motion to Dismiss ("First Motion to Dismiss") (D.E. 8), arguing that the post-indictment delay violated his constitutional rights. D.E. 8 at 1-5. On January 24, 2024, the Court denied the First Motion to Dismiss, on the grounds that Defendant was a fugitive and is thus disentitled from accessing the resources of the Court. D.E. 15; *See Pesin v. Rodriguez*, 244 F.3d 1250, 1252 (11th Cir. 2001).

On July 21, 2025, Defendant's counsel again contacted the Government and requested the dismissal of the Indictment. D.E. 27 at 3. The Government declined to do so. *Id*. Until July 2025, the Government was unaware that the Defendant was living in Jamaica. *Id*. at 2. On September 29, 2025, Defendant surrendered himself, and the same day filed the Motion. *Id*. at 3.

## II.     Applicable Law

The Sixth Amendment guarantees accused persons the right to a speedy trial. Recognizing that "the right to speedy trial is a more vague concept than other procedural rights[,]" the Supreme Court in *Barker* established a four-factor balancing test to determine whether the right had been violated. *Barker v. Wingo*, 407 U.S. 514, 521 (1972). "The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). This test is flexible and permits a court to attach different weight to each of the factors depending on the situation. *Barker*, 407 U.S. at 529.

A defendant "bears a heavy burden in showing that he has been the victim of a fundamentally unfair process." *United States v. Sanders*, 452 F.3d 572, 580 (6th Cir. 2006). "Further, dismissing an indictment is an 'extraordinary remedy.'" *United States v. Oliva*, 909 F.3d 1292, 1303 (11th Cir. 2018). "The Supreme Court has recognized that a defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the government pursued the prosecution with 'reasonable diligence,' and the defendant fails to show that the delay resulted in 'specific prejudice to his defense.'" *United States v. Harris*, 376 F.3d 1282, 1290 (11th Cir. 2004). Yet, where the first three factors weigh heavily against the Government, a defendant need not show actual prejudice to prevail on their claim. *Ingram*, 446 F.3d at 1336.

Delays greater than one year are generally "presumptively prejudicial" and trigger the *Barker* analysis. *Doggett v. United States*, 505 U.S. 647 n.1 (1992). When considering the reason for the delay, courts ask "whether the government or the criminal defendant is more to blame for that delay[.]" *Id*. at 652. If the Government "deliberately delayed" prosecution of the case, this factor weighs heavily against the Government. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009). If the reason for the delay is "more neutral…such as negligence or overcrowded courts" this factor weighs less heavily but is nevertheless considered as "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. However, "delay caused by the defense weighs against the defendant" and his "waiver [of his speedy trial right] may be given

effect under standard waiver doctrine." *Id*. The Supreme Court held that its "toleration of such negligence varies inversely with its protractedness[.]" *Doggett*, 505 U.S. at 657.

The Supreme Court rejected a standard holding that "a defendant who fails to demand a speedy trial forever waives his right." *Barker*, 407 U.S. at 529. "This does not mean, however, that the defendant has no responsibility to assert his right." *Id*. As with the other *Barker* factors, a court, in its discretion, may assign a different weight to this factor depending on the circumstances of the case. *Id*. "Whether and how a defendant asserts his right is closely related to the other factors… The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice." *Id*. at 531.

Finally, courts consider the prejudice to the defendant's interests created by the delay. The speedy trial right exists to protect three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. at 532. Of the three interests, the last, prejudice to the defendant's ability to defend themselves is the most serious. *Id*. The Supreme Court regards "none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id*. at 533.

## III.   Analysis

The Court begins its analysis by noting that, as Defendant was indicted in 1997, the length of the delay is presumptively prejudicial. Defendant alleges, and the Government

does not dispute, that this delay is sufficient to trigger the *Barker* analysis. D.E. 16 at 4; D.E. 27 at 5. Almost 30 years having elapsed, this factor weighs in favor of Defendant.

Next, the Court considers the reason for the delay. Defendant contends that the Government failed to exercise reasonable diligence to locate him, as Defendant was "living in plain sight in" Jamaica for nearly three decades after the Indictment was filed, and the Government did not look for him there or contact any of Defendant's friends or family to discover Defendant's whereabouts. D.E. 29 at 2. By contrast, the Government contends that Defendant is responsible for the delay, as he fled to another country after the Indictment was filed. D.E. 27 at 7.

As the Government bears the delay of showing that the delay was reasonable, the Court first considers the Government's efforts to locate and apprehend Defendant. *Ingram*, 446 F.3d at 1337. On September 29, 1997, the Government obtained an Interpol Red Notice.[2] D.E. 27 at 7. The Red Notice would alert federal authorities and Interpol members for the purpose of arresting Defendant in preparation for extradition if Defendant traveled by commercial airline or vessel. *Id*. Defendant did not do so during his 28 years in Jamaica and consequently, the Government was unaware of Defendant's location. *Id*.

The facts of the present case bear some similarity to *Frederick*, in which a defendant charged with fraud and identity theft offenses fled to Haiti and lived there for

---

[2] The Government also contends that its efforts to locate Defendant was hampered by the fact that the first time Defendant, through counsel, contacted the Government in 2022, the world was in the midst of a global pandemic. D.E. 27 at 8. However, the Government does not explain how this would affect its ability to locate or capture Defendant in the present case, and the Court gives this argument little consideration.

approximately six years. *United States v. Frederick*, 789 F. App'x 123, 125-126 (11th Cir. 2019). The Government in *Frederick* searched for the defendant at his residences, spoke with his co-defendants and associates, attempted to revoke his passport, and sought an Interpol Red Notice for him. *Id*. at 129. The Government did not attempt to extradite the defendant, on the basis that, even though it knew the defendant was in Haiti, securing extradition would have been infeasible. *Id*. at 125-126. The Eleventh Circuit found that the Government pursued the defendant with "some diligence" and that its negligence was "slight" and noted the defendant had employed "evasive tactics" by fleeing to Haiti. *Id*. at 129.

In the present case, Defendant contends that the Government failed to exercise diligence as it did not search for him through his relatives in the United States or in his birth country of Jamaica.[3] D.E. 16 at 5. The record reflects that the Government was tasked with apprehending a defendant who had fled to an unknown location by unknown means. D.E. 27 at 2. As Defendant left the country through means other than commercial airline or vessel, the Government was likely unaware that Defendant had even left the country. The Government did not have any information that Defendant was in Jamaica, owned property there, or collected a pension there. *See Id*. As the Government was unaware of Defendant's location, it could not request his extradition.

---

[3] The Indictment in this case has been unsealed since January 21, 1997. D.E. 27 at 2. At no point in the Motion or the Reply does Defendant aver that he was unaware of the Indictment. See D.E. 16; D.E. 29.

Nevertheless, the Government sought and obtained an Interpol Red Notice, which would have notified the Government had Defendant travelled via a commercial flight or ship. *Id*. Although it appears the Government did not search for Defendant in the United States, searching for Defendant in the United States would have been futile. Defendant had left the country, and it seems unlikely that Defendant's family would have reason to aid the Government in apprehending him.

The Court finds that the Government acted in good faith by obtaining the Interpol Red Notice and acted with some diligence in its pursuit. Even if the Court were to assume the Government knew or should have known that Defendant was in Jamaica, its failure to seek extradition or investigate Defendant in Jamaica would amount only to negligence, and its conduct would not weigh as heavily as actions taken to deliberately delay the trial. See *Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence…should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

While the Government bears the burden of bringing Defendant to trial, the Court also considers Defendant's conduct as it relates to the delay. *United States v. Villarreal*, 613 F.3d 1344, 1351 (11th Cir. 2010). After the filing of the Indictment, Defendant fled the country by means unknown to the Government, and the Government contends that he did not flee by commercial plane or vessel. D.E. 27 at 7. Defendant does not dispute these

facts. *See* D.E. 29. Further, Defendant's pleadings indicate he remained in Jamaica, outside the reach of the Government, for almost three decades. *Id*. at 2. Defendant made multiple attempts to have the indictment dismissed, all while a fugitive. D.E. 27 at 2. For these reasons, the Court finds that Defendant sought to evade arrest and prosecution in this case.

In weighing the second *Barker* factor, the Court finds *Wilson,* informative. *Wilson v. Mitchell*, 250 F.3d 388, 394. (6th Cir. 2001). In *Wilson*, the Sixth Circuit weighed the actions of the state against those of the defendant when considering which party was more at fault for an extraordinary 22-year delay. *See Id*. The state did little to apprehend the defendant during 16 of the 22 years when the defendant was on the lam. *Id*. at 392. However, the *Wilson* court found that the defendant was more at fault for the delay, as he purposely evaded arrest by changing his appearance and identity. *Id*. at 395 ("[B]ecause Wilson actively evaded discovery, and the state was, at worst, passive in its pursuit of him, we cannot attribute the primary responsibility for the delay to the state."). Thus, even where there is an extraordinary delay between the indictment and trial, the cause of the delay is often more critical than the delay itself. *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) ("The flag all litigants seek to capture is the second factor, the reason for delay.").

In the present case, the Court is faced with weighing the of the Government's good faith but passive efforts to locate Defendant against Defendant's evasion of the authorities and flight to Jamaica. Defendant's evasion of the authorities, even to another country, does not relieve the Government of its duty to exercise due diligence to attempt to locate and apprehend him. *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986). However,

the Government is not required to is not required to exhaust all conceivable avenues" or pursue "futile legal gestures" to apprehend Defendant. *United States v. Machado*, 886 F.3d 1070, 1080 (11th Cir. 2018). Moreover, as the Government did not know which country Defendant fled to or even that he *had fled* the United States, the Court does not find that the Government should have known to check property and pension records in Jamaica. Armed with what little information it had, the Government's efforts were reasonable.

The Government's passiveness does not weigh heavily against it "because it engaged in a good-faith effort to locate the defendant and 'the defendant was at liberty and outside the jurisdiction where the indictment was returned.'" *Frederick*, 789 F. App'x at, 129 (citing *Bagga*, 782 F.2d at 1544). Conversely, Defendant sought to evade prosecution by fleeing to another country. Despite the fact that Defendant is an American citizen who at one point held a passport, he chose to flee the country by apparently clandestine means. D.E. 16 at 2; D.E. 27 at 2. As the Government pursued Defendant in good-faith and with some diligence, and as Defendant is ultimately responsible for the delay, this factor weighs in favor of the Government.

Next, the Court considers whether Defendant waived his right to a speedy trial. Defendant argues that this factor should weigh heavily against the Government, as he has asserted his speedy trial rights by filing the Motion. D.E. 16 at 5. "Whether and how a defendant asserts his right is closely related to the other factors we have mentioned." *Barker*, 407 U.S. at 531.

In the present case, Defendant fled to another country after being indicted where he remained for 28 years. D.E. 27 at 2. Then, he made multiple attempts to have the case dismissed, first by contacting the Government through his attorney, then through filing the First Motion to Dismiss, while still a fugitive. *Id*. at 2-3. Now, Defendant, after being taken into custody, has filed the present Motion, asserting his right to a speedy trial. Here, Defendant's conduct reflects a desire, not for a speedy trial, but to evade the Government's prosecution of him.

Further, the fact that Defendant's counsel contacted the Government in 2022 to gauge the strength of the prosecution's case, unequivocally demonstrates that Defendant was aware of the indictment at least as early as July 2022. D.E. 27 at 2; *See Doggett*, 505 U.S. at 653 ("The Government goes against the record again in suggesting that Doggett knew of his indictment years before he was arrested. Were this true, *Barker*'s third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him."). Plainly, Defendant did not want a speedy trial—or any trial—for almost thirty years. The third *Barker* factor, while technically weighing in Defendant's favor, holds little weight.

Finally, the Court considers whether Defendant has suffered prejudice as a result of the delay. As Defendant was living free in Jamaica between 1997 and 2025, he did not suffer excessive pretrial incarceration, and any anxiety or concern arising out of his indictment during that time could have been ameliorated by surrendering himself, the Court need not consider the first two interests set forth in *Barker*. *Barker*, 407 U.S. at 532. The

Court now considers the final interest: whether Defendant's ability to defend himself has been impaired by the delay. *Id*.

Defendant argues that his ability to defend himself has been hampered, as one of his co-defendants has passed away and Opa-Locka Police Department has destroyed its records relating to the arrest. D.E. 16 at 6; D.E. 16-2; D.E. 29-1. Defendant further states that he believes the code enforcement officer who was one of the officers that searched the warehouse where the marijuana was found to be deceased, and that he believes that the marijuana has been destroyed. D.E. 16 at 6. Finally, Defendant argues that if the alleged offense were committed today, the Department of Justice would be unlikely to take over prosecution from Florida. *Id*.

The Government, by contrast, argues that it has sufficient witnesses and evidence to proceed with the prosecution, including evidence that was gathered during the investigation and preserved since then. D.E. 27 at 10-11. The Government also argues that this factor should weigh against Defendant as any prejudice he suffered was self-inflicted by his flight almost 30 years ago. *Id*.

The Court does not find that Defendant has shown that he suffered prejudice to his ability to mount a defense. While Defendant has submitted a death certificate showing that one of his co-defendants has passed away, he has not made any averments as to the other co-defendant, nor that the deceased co-defendant could provide any testimony that the living co-defendant could not. D.E. 29-1. Neither has Defendant explained how the death of the code enforcement officer has prejudiced him. The Government asserts that it has

witnesses and evidence available, including evidence preserved at the time of the investigation, and is prepared to proceed with trial. Defendant will be able to challenge any evidence the Government presents.

Since the Court has not found that the first three *Barker* factors weigh heavily in Defendant's favor, Defendant is required to show actual prejudice to his ability to defend himself at trial. *Villarreal*, 613 F.3d at 1355. Defendant's burden required him to come forward with evidence, not speculation, that he would face prejudice as a result of the delay. *See Id*. at 1356. He has not done so. Accordingly, the Court does not weigh this factor in Defendant's favor.[4]

However, even if the Court counted this factor in Defendant's favor, it would not alter the Court's conclusion. By fleeing prosecution, Defendant made himself unavailable for nearly three decades, during which he lived as a fugitive in another country. Defendant was aware of the indictment during this time, as he probed from afar the Government's

---

[4] Defendant also asserts that, based on the  Memorandum for Selected United State Attorneys on Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana ("2009 Holder Memo") and the Rohrabacker-Farr Amendment, it would be unlikely that the federal government would take over prosecution of this case if a state indictment were filed today. D.E. 16 at 6. The 2009 Holder Memo states, in relevant part, "This guidance regarding resource allocation does not 'legalize' marijuana or provide a legal defense to a violation of federal law, nor is it intended to create any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or witness in any administrative, civil, or criminal matter. Nor does clear and unambiguous compliance with state law or the absence of one or all of the above factors create a legal defense to a violation of the Controlled Substances Act. Rather, this memorandum is intended solely as a guide to the exercise of investigative and prosecutorial discretion." https://www.justice.gov/archives/opa/blog/memorandum-selected-united-state-attorneys-investigations-and-prosecutions-states. The Rohrabacker-Farr Amendment likewise does not pertain to the facts in this case, as medical marijuana was not legal in Florida in 1997, and Defendant has not alleged that the marijuana found in the present case was for medicinal purposes.

case and filed the First Motion to Dismiss, all without submitting himself to the jurisdiction of this Court. Accordingly, even if the Court were to find that the delay prejudiced Defendant's ability to defend himself from the charges in this case, it would not weigh this factor heavily in light of the fact that Defendant has spent decades avoiding a trial in this case.

In *Barker*, the Supreme Court found it probable that the defendant, who had been responsible for the pre-trial delay, had been "gambling" on the acquittal of his co-defendant. *Barker*, 407 U.S. at 535. In the present case, Defendant also appears to have been gambling, specifically, that he would never have to return to the United States and stand trial for the crimes he is accused of. "[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Id*. at 536.

## IV.    Conclusion

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss (D.E. 16) is **DENIED**. The Court will set this matter for trial by separate Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 2nd day of July 2026.

*Joan A. Lenard*

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

14